IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                   *
MICHELLE HEBRON,
                                   *
       Petitioner,
                                   *
           v.                              CIVIL NO.:     WDQ-12-1146
                                   *       CRIMINAL NO.:  WDQ-08-0086
UNITED STATES OF AMERICA,
                                   *
       Respondent.
                                   *
```

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
MEMORANDUM OPINION

Michelle Hebron pled guilty to racketeering conspiracy and
was sentenced to 360 months imprisonment.  Pending are Hebron's
motions to vacate, set aside, or correct sentence under 28
U.S.C. § 2255 and for a writ of error *coram nobis*.  No hearing
is necessary.  *See* Rule 8 of the *Rules Governing § 2255
Proceedings*.  For the following reasons, the motions will be
denied.

I.   Background[1]

Hebron was a member of Tree Top Pirettes, a female subset
of the Tree Top Piru ("TTP"), a Bloods gang.  ECF No. 920 at 9,
12.  TTP was involved in armed robberies, assaults, murders, and
narcotics trafficking.  *Id.* at 12.

On April 23, 2007, Hebron wrote to Steve Willock, her
superior in the TTP, "[y]es, I kill, die, ride, live and bang

---

[1] The facts are from Hebron's plea agreement.

for you 100%." *Id.* at 13.  On May 30, 2007, Hebron again wrote Willock stating that, "[s]ure murder is necessary but positivity is powerful . . . .  I will chew a nig** up [then] go to McDonald's and eat a double cheese burger like it's nothing you dig." *Id.* at 14 (alterations in original).

On October 5, 2007, David Leonard Moore was killed by a gunshot to the head in the building where Hebron lived. *Id.* at 15.  A witness identified Hebron as the shooter and heard her state "[t]hat's what the crab[2] . . . gets." *Id.*  The witness also saw Hebron place a gun in a rip in a couch, change clothes, and wash her hands with cleaner. *Id.*  Hebron later admitted to another witness that she had "shot a nig**." *Id.* (alteration in original).

On October 10, 2007, a Davis Industries Model P380 pistol was found in Hebron's apartment pursuant to a search warrant. *Id.*  Test-fires showed the gun matched a bullet retrieved from Moore's body and a cartridge case recovered from the scene of the murder. *Id.*  Law enforcement also recovered a note from Hebron stating, "[r]ed robins flyin round my head nig** goin brazy I guess just shot a nig** in the head cause he wear blue but claim red/plus I just wanted the satisfaction of seeing a nig** dead." *Id.* at 16.

---

[2] "Crab" is a derogatory term used by Bloods members to refer to members of the rival Crips gang.  ECF No. 920 at 10.

On February 21, 2008, Hebron was indicted for conspiracy to conduct and participate in the activities of a racketeering enterprise.  ECF No. 1.  Hebron was assigned to the group to begin trial on January 11, 2010.  *See* ECF No. 759.  On January 6, 2010, Hebron wrote to the Court and expressed dissatisfaction with her attorney, Richard B. Bardos, Esquire.  ECF No. 817-1. On January 13, 2010, an attorney inquiry hearing was held before then-Magistrate Judge James K. Bredar.  ECF No. 819.  Hebron reported that her issues with Bardos were resolved at the hearing, and she would continue with Bardos as her attorney. ECF No. 820 at 3.  Hebron's trial was rescheduled to begin on March 29, 2010.  *See* ECF No. 899.

On March 10, 2010,[3] Hebron wrote to the Court again expressing dissatisfaction with Bardos, alleging that Bardos was not considering her opinions, sharing information with the government, and "not giving this his all."  ECF No. 1336.  On March 29, 2010, a jury was selected for Hebron and her codefendant's trial.  ECF No. 913.  That day, another attorney inquiry hearing was held before Magistrate Judge Beth P. Gesner. ECF Nos. 910, 1294.  At the hearing, Judge Gesner repeatedly asked Hebron why she was dissatisfied with Bardos's performance, but Hebron failed to give a specific explanation.  *See generally*

---

[3] Hebron misdated the letter as March 10, 2012.  *See* ECF No. 1336 at 2; *see also id.* (March 15, 2010 chambers date stamp).

ECF No. 1294.  For example, she stated "[b]asically, not saying that my attorney wasn't doing his job but I just, you know, feel that things could be done better" and "I feel like there could be better strategy."[4]  ECF No. 1294 at 5:3-5, 13:4-5.  Hebron stated that her family was raising money for new counsel, but she had not yet retained anyone.[5]  *See id.* at 22:10-23:12. Hebron complained that Bardos had not found certain witnesses, but Bardos stated that he hired an investigator who was following Hebron's leads.  *Id.* at 13:6-14:9.  Bardos indicated that he had visited Hebron several times, talked to her on the phone, and wrote her letters; he concluded that he was able to communicate with her.[6]  *Id.* at 19:5-18.

Judge Gesner continued to press Hebron for an explanation of her dissatisfaction, but Hebron stated that she didn't think Bardos was "working for [her]," and he was lying to her.  *Id.* at 21:1-10.  When Judge Gesner asked her to explain, Hebron refused, stating "I mean, I can't discuss everything.  I can't discuss confidential stuff with you."  *Id.* at 21:18-20.  Hebron

---

[4] Hebron also complained that "some accusations against me on the indictment . . . shouldn't be there."  ECF No. 1294 at 7:19-20. Some of Hebron's issues appeared to be with Court-appointed counsel in general.  *See id.* at 9:7-9, 10:5-6, 22:10-12.

[5] Hebron never retained counsel.

[6] At Hebron's rearraignment, Bardos indicated that he had nine meetings with Hebron and "at least five or six phone calls." ECF No. 1103 at 7:23-24.

did not offer any additional details.  Finally, Judge Gesner discussed the ways in which Bardos had followed Hebron's instructions and was ably representing her and stated "I can't understand why -- you are entitled to your feelings, I will never tell you not to have your feelings but I need objective concrete understanding of why you have those feelings in order to determine that this can't continue -- that this relationship can't continue.  And I haven't heard that yet.  That is why I am trying to understand."  *Id.* at 25:5-10.  Hebron did not respond. *Id.* at 25:11.  Judge Gesner concluded that Hebron and Bardos's relationship was not irreparably broken and did not require new counsel.[7]  *Id.* at 27:14-29-6.

On April 1, 2010,[8] Hebron pled guilty to the sole count against her.  ECF Nos. 914, 920.  Hebron stated under oath that Bardos had not done anything she had told him not to or refused to do anything that she had told him to do.  ECF No. 1103 at 9:2-7.  She also swore that she had read the plea agreement and

_____

[7] At the hearing, Hebron also indicated that the Court had not acted on her request for medical and psychiatric treatment.  *See* ECF No. 1294 at 14:15-23.  On March 23, 2010, the Court had ordered an evaluation and treatment.  ECF No. 887.  After the hearing, Judge Gesner ordered Hebron's prior facility to send Hebron's records to the U.S. Marshal Service in Baltimore.  ECF No. 917.  On June 3, 2010, the Court ordered a psychiatric evaluation with Dr. Mario Gomez, which was completed before sentencing.  *See* ECF Nos. 997, 1104 at 8:22-9:14.

[8] Trial was not held on the intervening days because of Passover. ECF No. 884.

the statement of facts,[9] discussed them with Bardos, and agreed that they were true. *Id.* at 1103 at 11:2-16. No one had made her a promise or prediction about the sentence other than in the plea agreement. *Id.* at 11:25-12:3. The plea agreement stipulated a sentencing range of 300-360 months under Fed. R. Crim. P. 11(c)(1)(C). ECF No. 920 at 5.

Hebron then moved to withdraw her guilty plea in four letters to the Court and at her June 23, 2010 sentencing. *See* ECF No. 1031. The Court denied the motion, and sentenced her to 360 months imprisonment. *See id.*; ECF No. 1024. Hebron did not voice any concerns about Bardos at sentencing. *See generally* ECF No. 1104.

On July 16, 2010, Hebron appealed her conviction and sentence. ECF No. 1056. On August 11, 2011, the Fourth Circuit affirmed, rejecting Hebron's arguments that the Court abused its discretion by (1) failing to conduct a competency hearing, (2) accepting her guilty plea, and (3) denying her motion to withdraw her plea. *United States v. Hebron*, 442 F. App'x 887.

On April 9, 2012, Hebron moved to vacate, set aside, or correct under 28 U.S.C. § 2255. ECF No. 1276. On August 22,

---

[9] The parties'--or at least the defense's--intent was that the factual stipulation consist of two parts: (1) those facts with which Hebron agreed and (2) evidence that the government would have presented at trial. ECF No. 1104 at 16:25-17:5; *see* ECF No. 920 at 15. The facts about Moore's murder are in the latter section. *See* ECF No. 920 at 15-16.

2012, the government responded.  ECF No. 1296.  Hebron did not reply.

On August 24, 2012, Hebron wrote to the Court "in the form of a *coram nobis*," reiterating the arguments in her § 2255 motion and requesting release because of her father's and grandmother's illnesses.  ECF No. 1299.  On September 28, 2012, the government noted that it opposed Hebron's release and offered to submit a formal response if directed by the Court.  ECF No. 1305.

II.  Analysis

A.   Section 2255 Motion

Hebron asserts that (1) the Court had improperly denied her a mental evaluation, (2) denied her withdrawal of her guilty plea, (3) sentenced her when she was innocent of Moore's murder, and (4) Bardos's ineffectiveness denied her right to the appointment of new counsel.  ECF No. 1278 at 5.

1.   Arguments Raised on Direct Appeal

Hebron presented her first two arguments--about the need for a mental evaluation and her request to withdraw her guilty plea--on direct appeal.  *See Hebron*, 442 F. App'x at 888-93. The government asserts that she is precluded from collaterally attacking her sentence on these grounds.  ECF No. 1296 at 16, 20-21.

7

Generally, a defendant may not relitigate in a § 2255 motion issues rejected on direct appeal. *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Hebron has not indicated a change in the law or other ground for reconsideration of these issues. *See Roane*, 378 F.3d at 396 n.7. Accordingly, Hebron may not renew these arguments here.

    2.   Improper Sentencing

Hebron next asserts that the Court improperly considered the murder in imposing her sentence. *See* ECF No. 1278 at 5. The government asserts that she has procedurally defaulted on this claim. *See* ECF No. 1296 at 28.

A defendant procedurally defaults on a claim if she could have raised it on direct appeal but failed to do so. *See United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). She may bring a procedurally defaulted claim in a § 2255 motion only if she "can establish (1) that [s]he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom." *Id.* (*quoting Bousley v. United States*, 523 U.S. 614, 622 (1998)). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [her]." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).

Hebron has not shown why she could not have brought her sentencing challenge on direct appeal; thus, she has procedurally defaulted on this claim.  Hebron alludes to her actual innocence, claiming that she "pled guilty to some evidence in the stipulation of facts but not all which was the murders we openly expressed innocence at all times."  ECF No. 1278.  However, Hebron stipulated that the underlying racketeering activity involved first degree murder, and the government would have presented evidence including (1) a witness's identification of Hebron as Moore's shooter, (2) Hebron's admission to the witness that she had "shot a nig**," (3) the murder weapon was retrieved from Hebron's apartment, and (4) a note in Hebron's handwriting alluded to her commission of the murder.  ECF No. 920 at 4, 15-16.  Hebron swore that she had read, understood, and agreed with the factual stipulation.  ECF No. 1103 at 11:13-16.  From the evidence the government would have presented, Hebron has not shown the likelihood that no reasonable juror would have convicted her.  *See Bousley*, 523 U.S. at 623.  As Hebron has not shown actual innocence or asserted cause and prejudice, her claim has been procedurally defaulted.  *See Fugit*, 703 F.3d at 253.

3.   Ineffective Assistance of Counsel: Denial of

Right to New Counsel

Finally, Hebron asserts that her trial counsel provided ineffective assistance by denying her right to new counsel by, *inter alia*, "manipulat[ing] [her] to believe the court would not provide new counsel" ECF No. 1278.  The government asserts that this claim is procedurally defaulted.  ECF No. 1296 at 25.

Although the government reads Hebron's claim as challenging the Court's denial of her requests for new counsel, a better reading--in light of Hebron's *pro se* status[10]--is Bardos's ineffectiveness impeded her requests for new counsel.  *See* ECF No. 1278.  A claim of ineffective assistance of counsel is not subject to the procedural default rule.  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  Accordingly, the Court will examine the merits of Hebron's claim.

The Sixth Amendment guarantees the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance, Hebron must show: (1) counsel's performance was deficient and (2) the deficiency prejudiced her defense.  *Id*. at 687.  To show deficient performance, Hebron must establish that counsel made errors so serious that the

---

[10] "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"representation fell below an objective standard of reasonable-
ness." *Id.* at 688.

To show prejudice, she must demonstrate a "reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." *Id.* at 694.
If a defendant cannot prove prejudice, "a reviewing court need
not consider the performance prong." *Fields v. Attorney Gen. of
Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (*citing Strickland*, 446
U.S. at 697).

Although an indigent defendant has the right to be
represented by counsel, she "can demand a different appointed
lawyer only with good cause." *United States v. Gallop*, 838 F.2d
105, 108 (4th Cir. 1988). In reviewing a district court's
denial of an indigent defendant's motion for new counsel, the
Fourth Circuit examines: (1) "the timeliness of the motion," (2)
"the adequacy of the court's inquiry into the defendant's
complaint," and (3) whether the "conflict was so great that it
resulted in a total lack of communication preventing an adequate
defense." *United States v. Perez*, 661 F.3d 189, 191 (4th Cir.
2011) (internal quotation marks omitted). These factors are
then weighed "against the district court's interest in the
orderly administration of justice." *Id.* (internal quotation
marks omitted).

Despite Hebron's implication to the contrary, several judges repeatedly and thoroughly examined her requests for new counsel. After concerns about her counsel were raised by Hebron, *see* ECF No. 817, on January 13, 2010, an attorney inquiry hearing was held before Judge Bredar. ECF No. 819. Although a transcript of the hearing is not in the record, the issues were apparently resolved to Hebron's satisfaction: she wrote a letter to the Court stating that "[t]he issue I raised in my two letters to you about my attorney, Mr. Bardos, have all been resolved. I will continue with Mr. Bardos as my attorney." ECF No. 820 at 3.

On March 10, Hebron again wrote to the Court expressing dissatisfaction with her attorney. ECF No. 1336. On March 29, 2010, another attorney inquiry hearing was held before Judge Gesner. ECF No. 910. Hebron failed to articulate any particular reason for her dissatisfaction with Bardos. For example, she stated "[b]asically, not saying that my attorney wasn't doing his job but I just, you know, feel that things could be done better" and "I feel like there could be better strategy."[11]  ECF No. 1294 at 5:3-5, 13:4-5. Although Hebron

---

[11] Additionally, some of Hebron's complaints were out of Bardos's control, such as her position that "some accusations against me on the indictment . . . shouldn't be there." ECF No. 1294 at 7:19-20. Hebron's complaints also appear to reflect a general concern about court-appointed counsel. *See* ECF No. 1294 at 9:7-9 ("I mean, just -- I prefer to either represent myself or have

indicated that her family was raising money for another attorney, there is no indication that she ever retained counsel. *See* ECF Nos. 1294 at 22:10-23:12, 1336.  Further, in response to Hebron's request, Bardos hired an investigator to follow Hebron's leads.  ECF No. 1294 at 14:1-9.  Judge Gesner asked Hebron multiple times to provide a specific reason why she was dissatisfied with Bardos; Hebron never did.

Hebron's second request for new counsel was late in the process, coming after she had been rescheduled from the first trial group and just over two weeks before she was scheduled to go to trial.  Judge Gesner thoroughly inquired about Hebron's dissatisfaction and received no concrete answers.  Finally, besides Hebron's nebulous claims of dissatisfaction, there is no indication of a sufficient breakdown of communication between her and Bardos to require a change in counsel.  In fact, Bardos followed Hebron's requests for an investigator.  *See* ECF No. 1294 at 14:1-9.  At her rearraignment, Hebron stated under oath that Bardos had not done anything she told him not to, and had not refused to do anything that she told him to do.  ECF No. 1103 at 9:2-7.  Hebron expressed no dissatisfaction with her

---

time for my family to get the money together to get me a new lawyer,"), 10:5-6 ("Because I feel like stuff that we talk about will be shared with the Government."), 22:10-12 ("I am not trying to choose, I am getting my own -- getting another lawyer, a paid lawyer, not appointed counsel.  Not nobody from the courts.").

counsel at sentencing.  *See* ECF No. 1104.  There was no cause for a change of counsel under the *Perez* factors.

Hebron's conclusionary statements about Bardos's manipulation and lies do not demonstrate that but for Bardos's actions the result would have been different.  *See Strickland*, 668 U.S. at 694.  As she has not shown prejudice, her claim of ineffective assistance of counsel fails.

B.  *Coram Nobis*

On August 24, 2012, Hebron wrote to the Court "in the form of a *coram nobis*," and generally reiterated the arguments in her § 2255 motion.  *See* ECF No. 1299.  Hebron also seeks a reduction in her sentence because of her father's and grandmother's poor health.  *Id.*  The government opposes Hebron's release.  ECF No. 1305.

Federal courts have the authority to issue writs of *coram nobis* in criminal cases under the All Writs Act, 28 U.S.C. § 1651(a).[12]  *Bereano v. United States*, 706 F.3d 568, 575-76 (4th Cir. 2013).  A petitioner seeking *coram nobis* relief must show (1) a more usual remedy is not available, (2) there is a valid reason why she did not earlier attack the conviction, (3) the

---

[12] Fed. R. Civ. P. 60(b) abolished the writ of error *coram nobis* in civil cases.  The use of the writ in criminal cases was not affected because "[s]uch a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil proceeding." *United States v. Morgan*, 346 U.S. 502, 505 n.4 (1954).

consequences to her must be sufficiently adverse to satisfy the case or controversy requirement of Article III, and (4) "the error is of the most fundamental character." *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012) (internal quotation marks omitted).

Hebron has not met the requirements for *coram nobis* relief. As she is in custody, habeas corpus relief is available, as shown by her pending § 2255 motion. *Cf. Bereano*, 706 F.3d at 576. Hebron attacked her convictions through the § 2255 motion before she sought *coram nobis* relief. Further, her family members' regrettable illness is not an error of fundamental character.[13] Hebron is not entitled to *coram nobis* relief.

C. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*,

---

[13] *See Bereano*, 706 F.3d at 576 (explaining that "an error 'of the most fundamental character' is one that has 'rendered the proceeding itself irregular and invalid.'" (*quoting United States v. Mayer*, 235 U.S. 55, 69 (1914)).

542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks omitted). Denial of a COA does not prevent the petitioner from seeking permission to file a successive petition or pursuing his claims upon receipt of such permission.

Because Hebron has not made a substantial showing of the denial of her constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Hebron's motions to vacate, set aside, or correct and for a writ of error *coram nobis* will be denied.

4/15/13
_____
Date

_____
William D. Quarles, Jr.
United States District Judge