IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE HEBRON,

   *Petitioner*,

  v.

UNITED STATES OF AMERICA,

   *Respondent*.

Criminal No. ELH-08-0086

Related Civil No. ELH-12-1146

**MEMORANDUM**

    Michelle Hebron, the self-represented Petitioner, was one of 28 defendants charged in February 2008, in a criminal case that was previously assigned to Judge William D. Quarles, Jr.[1] *See* WDQ-08-0086 (the "Criminal Case"). She pleaded guilty to racketeering conspiracy and was sentenced to 360 months of imprisonment. ECF 915; ECF 1024.

    Hebron has filed a "Motion For Relief From Judgment," pursuant to Fed. R. Civ. P. 60(b)(6). ECF 5 ("Motion"). The Motion concerns a ruling made by Judge Quarles in April 2013, denying Hebron's motion to vacate under 28 U.S.C. § 2255. *See* ELH-12-1146 (the "Civil Case"), ECF 1 (motion to vacate); ECF 3 (Memorandum Opinion); ECF 4 (Order); *see also* ELH-08-0086 (the "Criminal Case"), ECF 1276 (Motion to Vacate); ECF 1278 (Supplement); ECF 1337 (Memorandum Opinion); ECF 1338 (Order).

    Hebron subsequently filed a second Motion to Vacate. Criminal Case, ECF 1412. Judge Quarles denied that motion in a Memorandum (ECF 1416) and Order (ECF 1417) of July 10, 2014.

---

[1] Due to the retirement of Judge Quarles, the case has been reassigned to me.

Hebron's pending Motion was docketed only in the Civil Case.[2]  The government has filed an opposition to Hebron's Motion.  It is docketed only in the Criminal Case, at ECF 1624.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

### I.     Procedural Background[3]

In his Memorandum Opinion of April 15, 2013, Judge Quarles summarized the facts, as set forth in Hebron's Plea Agreement (Criminal Case, ECF 920).  He said, *id.*, ECF 1337 at 1-2:

> Hebron was a member of Tree Top Pirettes, a female subset of the Tree Top Piru ("TTP"), a Bloods gang.  ECF No. 920 at 9, 12.  TTP was involved in armed robberies, assaults, murders, and narcotics trafficking.  *Id.* at 12.
>
> On April 23, 2007, Hebron wrote to Steve Willock, her superior in the TTP, "[y]es, I kill, die, ride, live and bang for you 100%."  *Id.* at 13.  On May 30, 2007, Hebron again wrote to Willock stating that, "[s]ure murder is necessary but positivity is powerful . . . . I will chew a nig** up [then] go to McDonald's and eat a double cheese burger like it's nothing you dig."  *Id.* at 14 (alterations in original).
>
> On October 5, 2007, David Leonard Moore was killed by a gunshot to the head in the building where Hebron lived.  *Id.* at 15.  A witness identified Hebron as the shooter and heard her state "[t]hat's what the crab[2] . . . gets."  *Id.*  The witness also saw Hebron place a gun in a rip in a couch, change clothes, and wash her hands with cleaner.  *Id.*  Hebron later admitted to another witness that she had "shot a nig**."  *Id.* (alteration in original).
>
> On October 10, 2007, a Davis Industries Model P380 pistol was found in Hebron's apartment pursuant to a search warrant.  *Id.*  Test-fires showed the gun matched a bullet retrieved from Moore's body and a cartridge case recovered from the scene of the murder.  *Id.*  Law enforcement also recovered a note from Hebron stating, "[r]ed robins flying round my head nig** goin brazy I guess just shot a nig** in the head cause he wear blue but claim red/plus I just wanted the satisfaction of seeing a nig** dead."  *Id.* at 16.
>
> _____
>
> [2] "Crab" is a derogatory term used by Bloods members to refer to members

_____

[2] Although the Motion was never docketed in the Criminal Case, both the Criminal Case number and the Civil Case number appear on Hebron's submission.

[3] The electronic citations generally refer to the docket entries in the Criminal Case.

2

of the rival Crips gang.  ECF No. 920 at 10.

_____

On April 1, 2010, Petitioner pled guilty to Count One of the Indictment (ECF 1), the sole count lodged against her, which charged racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  *See* Criminal Case, ECF 915.  In the Plea Agreement (*id.*, ECF 920), entered pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 360 months of imprisonment.  *See id.* ¶ 9.  At sentencing on June 23, 2010 (*id.*, ECF 1021), the Court imposed a sentence of 360 months.  *Id.*, ECF 1024 (Judgment).

Petitioner filed a direct appeal to the Fourth Circuit.  *Id.*, ECF 1056.  In the appeal, she claimed that the Court should have conducted a competency hearing during the criminal proceedings; should have declined to accept her guilty plea; and should have granted her motion to withdraw her guilty plea.  The Fourth Circuit rejected those arguments and affirmed.  *See id.*, ECF 1222; *United States v. Hebron*, 442 Fed. App'x 887 (4th Cir. Aug. 11, 2011) (per curiam).

With respect to the competency hearing issue, the Fourth Circuit determined that the Petitioner had failed to make a showing that the trial court should have ordered a competency hearing *sua sponte*.  *Hebron*, 442 Fed. App'x at 888.  With respect to Hebron's specific arguments about her competency during the criminal proceedings, the Fourth Circuit stated, *id.*:

> Here, Hebron is unable to point to examples of irrational behavior, a demeanor that raised questions regarding her competence, medical opinions addressing her competence, or any other evidence that would give rise to reasonable cause to believe that she failed to comprehend the nature of the proceedings against her or was unable to assist in her own defense.  Because Hebron fails to show reasonable cause that would require the district court to order a competency hearing, we refuse to find that the district court abused its discretion in failing to do so.

Further, the Court noted that the Petitioner had confirmed during her guilty plea that she

3

had been able to consult with counsel and understood the court proceedings and the plea agreement.  *Id.* at 889.  Therefore, the Court concluded that Hebron provided "no medical evidence of incompetency and no evidence raising questions concerning Hebron's ability to understand what was happening."  *Id.*

Petitioner filed her first motion to vacate in April 2012, under 28 U.S.C. § 2255.  ECF 1276.  Judge Quarles denied the motion on April 15, 2013.  ECF 1337 (Memorandum Opinion); ECF 1338 (Order).  Thereafter, on July 1, 2014, Hebron filed a second § 2255 motion.  ECF 1412.  Judge Quarles denied that motion on July 10, 2014, without prejudice, as an unauthorized, successive § 2255 motion.  ECF 1416; ECF 1417.

Petitioner mailed the Motion on or about September 24, 2019.  Civil Case, ECF 5.  It was received by the Court and docketed on October 4, 2019, but only in the Civil Case.  *Id.*  As noted, the government's opposition is docketed only in the Criminal Case, at ECF 1624; *see also* ECF 1625.

## II.  Discussion

### A.

The Motion is labeled as a motion under Rule 60(b).  But, as the government observes, Criminal Case, ECF 1624 at 3, it is functionally an unauthorized, successive § 2255 motion.

Rule 60(b) of the Federal Rules of Civil Procedure provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic); misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on

>    an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Hebron cannot use Fed. R. Civ. P. 60(b) to mask the actual nature of her submission. *See United States v. Winestock*, 340 F.3d 200 (4th Cir. 2003) *abrogated in part on other grounds, as recognized in United States v. Trappier*, 788 Fed. App'x 239 (4th Cir. 2019) (per curiam).

An examination of Hebron's claims demonstrates that her Motion, although captioned as a Rule 60(b) motion, is actually an attempt to attack her underlying criminal conviction and sentence in the Criminal Case. In Claim One, Petitioner contends that her trial and appellate counsel were ineffective for failing to challenge the use of murder evidence at sentencing. Civil Case, ECF 5 at 2. As the government puts it, Criminal Case, ECF 1624 at 5, "This is plainly a complaint about the criminal case."

In Claim Two, Hebron asserts that there has been a "change in law requiring a defendant be given an independent mental health expert versus a neutral expert," and that she was "improperly diagnosed and medicated when she pled guilty." Civil Case, ECF 5 at 3. Her legal arguments concern the law applicable to the guilty plea and sentencing.

In Claim Three, Petitioner asserts that there was a breakdown between her and her defense counsel because she was improperly medicated by the government. *Id.*, ECF 5 at 3-4. The entirety of this claim is about the Petitioner's mental state at the time of her Criminal Case, and the impact of that mental state on her decision to plead guilty. That is, again, a challenge to the criminal conviction.

Therefore, I conclude that the Motion is a renewed attempt to present arguments attacking the criminal conviction and sentence. It follows that the Motion is actually a § 2255 petition, not a Rule 60(b) motion. Rule 60(c)(1) requires that motions filed under Rule 60(b)(6) be filed "within

a reasonable time." Moreover, Hebron's Motion, which challenges a conviction from 2010, for which two § 2255 motions were filed and denied years ago, has not been filed within a reasonable time. *See* Fed. R. Civ. P. 60(c).

In addition, Hebron has not satisfied the requirements for the filing of a successive § 2255 petition. Prisoners seeking to file a new § 2255 motion after the denial of a previous one must satisfy the pre-filing requirements set forth in 28 U.S.C. § 2255(h):

> (h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> > (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> >
> > (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

The Petitioner has not satisfied those requirements. The Petitioner's arguments are not based on "newly discovered evidence" that establishes her innocence. Nor is the Motion based on a new, retroactively applicable rule of constitutional law. And, she clearly has not secured permission from the United States Court of Appeals for a successive § 2255 filing.

### C.

Alternatively, the Motion fails on its merits. In support of Hebron's mental health claims, she contends that there has been a "change in law" that requires she be provided with an independent mental health expert. Civil Case, ECF 5 at 3. In support of Hebron's claim, she cites *Ake v. Oklahoma*, 470 U.S. 68 (1985), and *McWilliams v. Dunn*, ___ U.S. ___, 137 S. Ct. 1790 (2017).

*Ake* long precedes the Petitioner's first § 2255 motion, and so it certainly is not a "change in law." *McWilliams* was decided in June 2017. But, it does not appear to state a new legal rule.

Rather, it applied a preexisting constitutional rule, derived from *Ake v. Oklahoma*: an indigent defendant "must receive the assistance of a mental health expert who is sufficiently available to the defense and independent from the prosecution to effectively 'assist in evaluation, preparation, and presentation of the defense.'" *McWilliams*, 137 S. Ct. at 1799-1800 (quoting *Ake*, 470 U.S. at 83). In other words, *McWilliams* merely applies a rule of law that was in effect before Petitioner's conviction and first § 2255 motion.

In addition, *McWilliams* requires that a defendant must be provided access to a competent psychiatrist "when [the] defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *McWilliams*, 137 S. Ct. at 1802 (Alito, J., dissenting) (quoting *Ake*, 470 U.S. at 83). But, Petitioner failed to make such a showing. To the contrary, the facts of this case remain the same as when the Fourth Circuit rejected Petitioner's mental health challenge on direct appeal. *See Hebron*, 442 Fed. App'x at 888.

Furthermore, as the government points out, Criminal Case, ECF 1624 at 9-10, the issue in *Ake* and *McWilliams* concerned the requirement that a defendant be provided with independent mental health assistance to assert a defense to the crime, not to assist in a determination of competency to stand trial. It states, *id.* at 9-10: "Hebron has never pointed to her mental health issues as a defense to guilt, but rather has complained in her previous filings about whether she was competent to plead guilty. The Fourth Circuit has noted the significance of that distinction and has indicated that the rule in *Ake v. Oklahoma* does not necessarily apply to questions of competency[.]"

The government cites *Bell v. Evatt*, 72 F.3d 421 (4th Cir. 1995), in which the Court said, *id.* at 431 (emphasis in original):

> *Ake* established a due process right to a mandatory competency hearing *when the defendant is indigent* and an examination is necessary to determine the

7

defendant's criminal responsibility *at the time of the crime*. In sharp contrast, Bell was neither indigent, nor unable to hire his own mental experts. Furthermore, belle's examination differed from Ake's, in that Bell's examinations determined his *competency to stand trial*.

Even if this were Petitioner's first § 2255 petition, any claim based on *McWilliams* would be barred by the one-year statute of limitations for § 2255 claims. *See* 28 U.S.C. § 2255(f). *McWilliams* was decided on June 19, 2017, well over a year prior to the filing of the instant Motion, which appears to have been mailed on or about September 24, 2019.

### III.    Conclusion

For the foregoing reasons, I shall dismiss the Motion. ECF 5. A Certificate of Appealability ("COA") shall not issue.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a COA when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).[4]

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack*

---

[4] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the Fourth Circuit.

*v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of her constitutional rights. Therefore, I decline to issue a COA.

An Order follows.

Date:   August 18, 2020                                                   /s/
                                                                Ellen L. Hollander
                                                                United States District Judge